# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| FABIOLA BETANCOURT DIAZ,<br>    Petitioner,<br><br>              v.<br><br>PIETRO MIGUEL BENIGNO FIGUEREDO,<br><br>    Respondent. | Civil Action No.<br>1:25-cv-05956-SDG |

## OPINION AND ORDER

This matter is before the Court on Petitioner's Complaint and Verified Petition for Return of Minor Children (the Petition) pursuant to Article 3 of the Hague Convention (the Convention). The Court held an evidentiary hearing on the Petition on January 9, 2026. After careful consideration of the evidence, the Court **GRANTS** the Petition and **ORDERS** the return of the minor children, P.B.B. and A.B.B., to Spain and the custody of Petitioner. In accordance with Article 19 of the Convention, this order is not a determination of the merits of any custody issues.

## I.   Background

Fabiola Betancourt Diaz (Petitioner) and Pietro Miguel Benigno Figueredo (Respondent) are the parents of two daughters, P.B.B. and A.B.B. Petitioner and Respondent were living together in Venezuela when both of their daughters, now

ages 10 and 7 respectively, were born. In 2017, Petitioner and Respondent were married—and are still married today—though they have been living apart since some time in 2022.

In 2019, all four members of the family left Venezuela for Italy in search of better economic opportunities. For roughly the next two years, the family moved back and forth from Venezuela to Italy, and it was during one of these periods in Italy that the children received Italian citizenship and passports. In early 2021, the family returned to Venezuela; it was during this period that Petitioner and Respondent began living separately. In 2022, Petitioner and the children moved to Spain, where Petitioner applied for and received temporary political asylum. Some time later, Respondent moved to and applied for asylum in the United States.

Because of their respective asylum applications, Petitioner and Respondent felt they could not travel, so they worked out an arrangement under which the children would visit Respondent for brief trips in the United States. The children first visited in December 2023 and stayed for a few weeks. In 2024, the children spent their summer in the United States. It was again the plan for 2025 that the children would spend their summer with Respondent in the United States. The children left Spain on May 26, 2025 and were scheduled to return on August 22, 2025, via round-trip airline tickets purchased by Petitioner with Respondent's

funds. But on the day of the children's return flight to Spain, Respondent informed Petitioner that the girls would not be returning. In early September 2025, Petitioner filed a Spanish Central Authority Application under the Convention for the return of the children. The instant petition was filed on October 17, 2025, pursuant to Article 3 of the Convention.

The Convention seeks "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." *Hanley v. Roy*, 485 F.3d 641, 644 (11th Cir. 2007). "The [C]onvention is intended as a rapid remedy for the left-behind parent to return to the status quo before the wrongful removal or retention." *Ruiz v. Tenorio*, 392 F.3d 1247, 1250 (11th Cir. 2004).

"The Convention and [the implementing legislation] empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims." *Baran v. Beaty*, 526 F.3d 1340, 1344 (11th Cir. 2008) (quoting 22 U.S.C. § 9001(b)(4) (alteration in original)). Thus, "[a] court's inquiry is limited to the merits of the abduction claim and not the merits of the underlying custody battle." *Ruiz*, 392 F.3d at 1250 (citation omitted). *See also Seaman v. Peterson*, 766 F.3d 1252, 1257 (11th Cir. 2014) ("[T]he central purpose of the Convention and [the implementing legislation] in the case of an abducted child

is for the court to decide as a gatekeeper which of the contracting states is the proper forum in which the issue of custody should be decided."); *Calixto v. Lesmes*, 909 F.3d 1079, 1083 (11th Cir. 2018) (same).

## II.     Findings of Fact

The Court finds that the retention of P.B.B. and A.B.B. in the United States as of August 22, 2025 was wrongful. It further finds that Respondent did not meet his burden of proving an affirmative defense under the Convention. The Court will first address the prima facie elements under Article 3 and will then address each affirmative defense raised by Respondent.

### A.     The Petitioner established a prima facie case of wrongful retention.

Article 3 of the Convention on the Civil Aspects of International Child Abduction governs the wrongful removal and retention of children. It states:

> The removal or the retention of a child is to be considered wrongful where:
>
> a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Because these elements require a temporal analysis, the Court must first determine the relevant date of retention.

### 1. Retention was wrongful as of August 22, 2025.

In the Eleventh Circuit, the date of wrongful retention is measured from the date the custodial parent informs the non-custodial parent that the child will not be returning to the state of habitual residence. *Palencia v. Perez*, 921 F.3d 1333, 1342 (11th Cir. 2019). In *Palencia*, the court held that the need for such a rule is "even stronger where—as here—the custodial parent makes affirmative representations regarding the date of the child's return and then fails to act in accordance with them." *Id.* "'[W]rongful retention' occurs when one parent, having taken the child to a different Contracting State with permission of the other parent, fails to return the child to the first Contracting State when required." *See generally Taveras v. Morales,* 22 F. Supp. 3d 219, 231–32 (S.D.N.Y. 2014); *see also Redmond v. Redmond,* 724 F.3d 729, 738 n.5 (7th Cir. 2013) ("Wrongful retentions typically occur when a parent takes a child abroad promising to return with the child and then reneges on that promise.").

The parties do not dispute that, when the children left Spain on May 26, 2025, it was the intent of both Petitioner and Respondent that the children would return to Spain on August 22, 2025 by means of their return flight. The retention

became wrongful on August 22 when, after Petitioner inquired with Respondent about the travel scheduled for that day, Respondent told Petitioner that the children would not be boarding their return flight and would be staying with him in the United States. The Court therefore finds that retention was wrongful as of August 22, 2025.

### 2. The children's habitual residence was Spain immediately prior to the wrongful retention.

A child's habitual residence depends on the totality of the circumstances specific to the case and not on categorical requirements. *Monaski v. Taglieri*, 589 U.S. 68, 71 (2020). Neither party disputes that Spain was the children's habitual residence prior to August 22, 2025. P.B.B. and A.B.B. had lived in Spain with Petitioner since 2022. They attended school there, maintained regular after-school activities there, and returned there after their temporary stays with Respondent in the United States (prior to the May 2025 visit). The Court finds that Spain was the children's habitual residence immediately prior to their wrongful retention.

### 3. Petitioner had custody rights prior to the wrongful retention.

To determine whether a party has custodial rights, courts look to the laws of the country where the child was a habitual resident immediately prior to the

wrongful retention—here, Spain. Accordingly, Petitioner's custodial rights are determined pursuant to Spanish law.

The parties did not dispute during the January 9th evidentiary hearing that Petitioner had custodial rights to the children. Spanish law presumes that both parents have equal right of custody, and that if the Parties are to live separately, that parental authority shall be exercised by the parent with whom the child lives.[1] There is no dispute that Petitioner is the biological mother of P.B.B. and A.B.B. The parties agree that Petitioner and Respondent have lived separately since some time in 2022 and that the children's habitual residence is with Petitioner in Spain. The Court finds that Petitioner had custodial rights to the children prior to their wrongful retention.

### 4. Petitioner was exercising her custodial rights prior to the wrongful retention.

There is no question that Petitioner was actually exercising her custodial rights immediately prior to the wrongful retention. Petitioner testified that the girls lived with her in her apartment in Spain and that she played an active role in

---

[1] Código Civil (Civil Code), On Parent-Child Relations § Title VII, Chapter One, Article 156.

their lives. The parties do not dispute, and this Court finds, that Petitioner was exercising her custodial rights immediately prior to the wrongful retention.

In sum, Petitioner has satisfied her burden of establishing a prima facie case of wrongful retention under Article 3 of the Convention.

### B. Respondent has failed to establish his affirmative defenses.

Because this Court finds that Petitioner has met her prima facie burden, the burden shifts to Respondent to prove that an affirmative defense applies and that this Court should not order the return of the children. Articles 12, 13, and 20 of the Convention contemplate five defenses to an international child abduction case, and Respondent raises two of them: the grave-risk-of-harm defense and the mature-child-objection defense. These affirmative defenses must be "construed narrowly" to "prevent them from swallowing the rule and rendering the Convention a dead letter." *Berenguela-Alvarado v. Castanos*, 950 F.3d 1352, 1358–59 (11th Cir. 2020) (citations omitted). Based on the evidence presented during the trial, the Court finds that Respondent has failed to satisfy his burden with respect to both defenses raised.

#### 1. The grave-risk-of-harm defense

Pursuant to Article 13(b) of the Convention, courts are not required to order a child to return where "there is a grave risk that his or her return would expose

the child to physical or psychological harm or otherwise place the child in an intolerable situation." This defense requires the alleged physical or psychological harm to be "a great deal more than minimal." *Lopez v. Alcala*, 547 F. Supp. 2d 1255, 1260 (M.D. Fla. 2008) (citations omitted). Respondent bears the burden of proving this defense by clear and convincing evidence.

The Court construes Respondent's allegations of harm as consisting of three types: (1) Petitioner's discipline style, (2) dangers associated with being unsupervised, and (3) Petitioner's sexual promiscuity. While Respondent has put forth some parenting issues that raise legitimate concern over what is in the best interest of the children, the Court concludes that Respondent has failed to carry his burden of proving that any of these issues are so severe as to constitute a grave risk of harm, the standard required by the Convention.

Respondent alleges Petitioner disciplines the children by hitting and yelling at them, but the evidence he put forward does not show that Petitioner's discipline style puts the children at a grave risk of harm. P.B.B., the 10-year-old daughter, shared with the Court *in camera* that Petitioner hit her. In addition to undue influence concerns discussed below, the Court found P.B.B.'s testimony to be inconsistent, not entirely credible, and likely exaggerated. As Petitioner herself acknowledged, she did on occasion physically or verbally *discipline* her children,

but Respondent did not put forth sufficient evidence that Petitioner *abuses* them or subjects them to grave risk of harm.

As for the children being unsupervised, Respondent put a great deal of emphasis on the fact that Petitioner lets her 10-year-old daughter walk alone to her tennis lessons in Madrid—a distance that Petitioner credibly testified was only a 5-minute walk from their home, in a safe and children-friendly neighborhood. Besides P.B.B.'s walks to her tennis lessons, Respondent did not put forward any additional evidence that Petitioner regularly leaves her children unsupervised. The Court finds no grave risk of harm on this front.

Finally, much was tendered during the evidentiary hearing about Petitioner's alleged sexual behavior. While the Court did not find all of it credible, it did find the children's exposure to some of it concerning. Respondent put forward evidence of a possible affair that Petitioner had a few years ago with Respondent's adult son from a previous relationship.[2] He and P.B.B. also recounted an incident from 2023 where P.B.B. walked in on Petitioner and her boyfriend unclothed and on top of each other when the girls got home from school.

---

2   Respondent introduced WhatsApp messages credibly demonstrating that, at a minimum, sexually explicit language was shared between Petitioner and Respondent's adult son.

P.B.B. further spoke of times, again years back, when Petitioner had different men spend the night and P.B.B. didn't like it. While the children's exposure to some of this may certainly not be in their best interest, the Court finds that, on the record presented, it does not rise to the level of putting the children at a grave risk of harm. The severity of these incidences is further assuaged by the fact that they all occurred a number of years ago—Respondent did not put forward any credible allegations of ongoing or very recent harm to the children.

To that point, the Court notes that there were a few mentions of inappropriate contact between P.B.B. and Petitioner's boyfriend, though the Court does not find them sufficiently credible. Respondent alleged that Petitioner would let her boyfriend use the restroom at the same time the girls were bathing. Petitioner and her boyfriend (both of whom testified) denied this, stating that there were only accidental restroom run-ins on account of it being the only one in the apartment. P.B.B. also stated *in camera* that Petitioner's boyfriend asked her to sit on his lap and that he moved his legs around and she felt something "hard" beneath her, after which the boyfriend told her not to tell anyone. While this would be alarming if true, the Court found P.B.B.'s testimony not credible. P.B.B. said that she told this to Respondent, her therapist, and a teacher, but neither Respondent nor the therapist (both of whom testified) corroborated this allegation. Nor was

any teacher called by Respondent to testify. P.B.B also gave conflicting accounts about how often it happened and what Petitioner allegedly said when she told her. The Court does not make light of these serious allegations but finds that the allegations were not sufficiently proven.

In short, the Court finds Respondent has failed to meet his burden of showing by clear and convincing evidence that P.B.B. and A.B.B. are at a grave risk of harm should they return to Spain and the custody of Petitioner.

### 2. The mature-child-objection defense

Pursuant to Article 13 of the Convention, the Court may decline to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of her views. While the Court has discretion to determine the applicability of this defense, there are three primary considerations:

> (1) whether the child is sufficiently mature;
>
> (2) whether the child has a particularized objection to being repatriated; and
>
> (3) whether the objection is the product of undue influence.

*Romero v. Bahamonde,* 857 F. App'x 576, 584 (11th Cir. 2021).

The Convention contains no age minimum a child must meet for a court to consider whether she is mature. *See Blondin v. Dubois*, 238 F.3d 153, 167 (2d Cir. 2001), *abrogated on other grounds by Golan v. Saada*, 596 U.S. 666 (2022). Indeed, courts have had children as young as seven evaluated for maturity and, conversely, courts have found children twelve or older not mature. *See Jardim v. Paez*, 2025 WL 3701303, at *6 (S.D. Fla. Dec. 22, 2025) (collecting cases). "Given the fact-intensive and idiosyncratic nature of the inquiry, decisions applying the age and maturity exception are understandably disparate." *Hamidas v. Hamidas*, 720 F. Supp. 2d 183, 204 (E.D.N.Y.) (quotations and citations omitted), *aff'd*, 401 F. App'x 567 (2d Cir. 2010).

Even when a court determines a child is mature, the mature-child-objection defense is still inapplicable if the child expresses merely a preference for one country or one parent over another—as opposed to a particularized objection to returning to her country of habitual residence. *Romero,* 857 F. App'x at 583; *Colon v. Mejia Montufar*, 470 F. Supp. 3d 1280, 1296–97 (S.D. Fla. 2020). While a child's preference for one of two acceptable living situations would be considered in a custody dispute, it is not sufficient under Article 13 of the Convention; only a particularized objection to returning to an "unacceptable" living situation in the country of habitual residence is "sufficient to trump the Convention's strong

presumption in favor of return." *Rodriguez v. Yanez*, 817 F.3d 466, 477 (5th Cir. 2016); *Colon*, 470 F. Supp. 3d at 1296.

Further still, if a court finds the child's testimony is the product of undue influence, it cannot credit that testimony as a particularized objection. *Colon*, 470 F. Supp. 3d at 1298. "Courts will consider the nature of the child's objection to determine if it is the product of undue influence." *Id.* Courts recognize the possibility that a child's testimony may be unduly influenced by the preferences of the parent with whom she currently lives. *Barrera Casimiro v. Pineda Chavez*, 2006 WL 2938713, at *7 (N.D. Ga. Oct. 13, 2006). As such, courts consider whether the child's reasons for preferring to stay in the United States appear to have been supplied by someone else, whether the child's testimony appears to be based on personal knowledge, and whether the child's testimony is inconsistent with other testimony, among other factors. *Id.*; *Colon*, 470 F. Supp. 3d at 1298; *Hamidas*, 720 F. Supp. 2d at 207.

At the January 9 evidentiary hearing, the Court heard testimony from Petitioner, Petitioner's boyfriend, the children's psychologist, and the Respondent before deciding to interview P.B.B., the elder of the two girls, *in camera*. After considering all testimony, the Court finds that Respondent has not proved by a

preponderance of the evidence that P.B.B. is sufficiently mature for the Court to take her views into account.

All in all, the Court finds that P.B.B. is a well-mannered and kind-hearted child who has been through a lot in her 10 years, but she is not particularly mature for her age. P.B.B. shared her views on returning to Spain, stating that she does not wish to return because she does not like "how her mother treats her" or "what she sees" (referring to Petitioner's sexual behavior). But as discussed previously, the Court does not find Petitioner's treatment of her children or her alleged sexual behavior to pose a grave risk of harm to the children should they return to Spain. As the Court views it, P.B.B.'s life with her mom versus life with her dad are both acceptable options, so the Court construes PB.B.'s statements more as preferences than as objections. However, the Court need not explicitly decide whether P.B.B.'s statements constitute particularized objections because of its determination that P.B.B. is not sufficiently mature and its further determination that P.B.B.'s testimony was the product of undue influence.

The Court recognizes the risk that P.B.B. was unduly influenced by Respondent, with whom she has been living since May and with whom she clearly feels connected. *See Barrera Casimiro*, 2006 WL 2938713, at *7 (collecting cases of courts recognizing the tendency of children to be unduly influenced by the

preferences of the parent with whom they live). When asked what Respondent had told her about the litigation, P.B.B. said her dad told her that "the judge was going to decide" whether she lives with her mom or her dad. P.B.B.'s psychologist also testified that the girls were worried about the lawsuit her dad was facing. Considering what P.B.B. was told, the emotions she was feeling, and her obvious preference for her life in the United States over her life in Spain, the Court finds she was unduly influenced. This conclusion is further bolstered by how P.B.B. seemed to emphasize the same key points as Respondent—as if she had been coached on what to talk about—yet the details of her answers were inconsistent with testimony from other witnesses and even inconsistent with her own previous answers.

Accordingly, because the Court finds the presence of undue influence in P.B.B.'s testimony, and because it finds that neither A.B.B. nor P.B.B. are sufficiently mature for the Court to consider their views, the mature-child-objection does not apply.

### III.  Conclusion

Because Petitioner has established her prima facie case of wrongful retention and Respondent has failed to meet his burden with respect to any

affirmative defense, the Verified Petition for Return of Minor Children to Spain [ECF 1] pursuant to Article 3 of the Hague Convention is **GRANTED**.

The Court **ORDERS** the parties to immediately meet and confer about the particulars for returning P.B.B. and A.B.B. to Spain, including but not limited to the person(s), if any, who will accompany the children to Spain, who will be responsible for the travel costs, the timing of said travel, and the custodial arrangement between Petitioner and Respondent once the children arrive in Spain. If an agreement cannot be reached by January 20, 2026, the parties shall notify the Court by email of same and a hearing will be scheduled to resolve the remaining issues. Respondent is **ORDERED** to remain in the State of Georgia with the children until further notice.

Respondent's motion for the appointment of a guardian ad litem [ECF 26] is **DENIED as moot**. To the extent Petitioner wishes to seek her attorney's fees, any motion requesting same must be filed within 30 days of this Order, and any

response in opposition shall be filed within 14 days of the motion's filing. The Clerk is **DIRECTED** to submit this Order to undersigned after 45 days.

**SO ORDERED** this 14th day of January, 2026.

Steven D. Grimberg<br>
United States District Judge